IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY LAM,

                    Petitioner,

          vs.

JOEL MARTINEZ, Warden, Sierra
Conservation Center,[1]

                    Respondent.

No. 2:14-cv-01504-JKS

MEMORANDUM DECISION

          Timothy Lam, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas

Corpus with this Court pursuant to 28 U.S.C. § 2254.  Lam is in the custody of the California

Department of Corrections and Rehabilitation and incarcerated at Sierra Conservation Center.

Respondent has answered, and Lam has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

          On June 14, 2012, Lam was charged with one count of vehicle theft, with the allegation

that he previously suffered a prior vehicle theft conviction.  The information further alleged that

he had suffered a prior arson conviction, which qualified as a strike prior, as well as four

separate prison priors.  Lam pled not guilty to the charge, denied the allegations, and proceeded

to jury trial.  On direct appeal of his conviction, the California Court of Appeal described the

following events underlying the charge against Lam and the evidence presented at trial:

----

[1]          Joel Martinez is substituted for Heidi M. Lackner as Warden, Sierra Conservation
Center.  FED. R. CIV. P. 25(d).

### Prosecution Case–in–Chief

On December 28, 2011, Jason Wheeler was staying at the apartment of his friend Steve Buckley. During the stay, Buckley borrowed Wheeler's white pickup truck to run an errand.

At 5:00 a.m. the next day, Wheeler began getting ready for work. Around 5:30 a.m., two friends of Buckley—[Lam] and a woman named Melia—arrived at the apartment. Melia proceeded to Buckley's bedroom and closed the door while [Lam] and Wheeler remained in the living room. After a few minutes, [Lam] left to go to a store.

While [Lam] was away, Wheeler asked Buckley for the keys to Wheeler's truck. Buckley said they were in the front room. Wheeler searched the front room and kitchen but did not find the keys. [Lam] returned during the search and denied having the keys.

Wheeler heard the clinking of his keys and saw Melia shove an object down the front of her pants. Believing Buckley and Melia were playing a joke on him, Wheeler proceeded to the bathroom and started cleaning his teeth. While in the bathroom, Wheeler heard the sound of his truck moving and ran outside. Wheeler testified that the sun "wasn't out yet," but "[i]t was coming up." The day was clear and the skies were blue.

In the available light, Wheeler saw [Lam] backing the truck out of the apartment complex. Wheeler also saw Melia, who was sitting in her own car on the street outside the complex. After [Lam] observed Wheeler outside the apartment, [Lam] and Melia drove away. Wheeler reentered the apartment and, at 7:01 a.m., he called 911. He told the 911 operator his truck had been stolen five minutes earlier.

Six days after the theft, police found Wheeler's truck. Wheeler's watches, jewelry, compact discs, and photographs were missing from the truck. Because the key also was missing, a locksmith re-keyed the ignition switch.

### Defense

The defense rested without presenting evidence or testimony.

*People v. Lam*, No. C071842, 2013 WL 5467452, at *1 (Cal. Ct. App. Oct. 2, 2013).

At the conclusion of trial, the jury found Lam guilty as charged. Because Lam waived his right to a jury trial on the prior conviction allegations, the court conducted a bench trial and found that Lam had a prior serious felony conviction and a prior vehicle theft conviction and had served four prior prison terms. The court subsequently sentenced Lam to an aggregate term of 12 years' imprisonment.

Through assigned counsel, Lam appealed his conviction by filing a brief pursuant to *People v. Wende*, 600 P.2d 1071 (Cal. 1979), whereby appointed counsel filed an appellate brief

reciting a summary of the proceedings and the facts of the case and requesting the court to

independently review the record because counsel had found no arguable legal issues to raise.

Appellate counsel informed Lam of the filing of the *Wende* brief and advised him that he could

file a supplemental brief in the Court of Appeal within 30 days of the date the *Wende* brief was

filed or by leave of the court.  Lam filed a supplemental *pro se* brief in which he argued that:

1) he was denied the effective assistance of counsel during plea negotiations; 2) he was denied

the effective assistance of counsel on appeal; 3) the prosecutor committed misconduct by

eliciting perjury; and 4) the prosecutor committed misconduct by vouching for the credibility of

a witness who the prosecutor knew had perjured himself.  On October 2, 2013, the Court of

Appeal issued a reasoned, unpublished opinion affirming the judgment against Lam in its

entirety.  *Lam*, 2013 WL 5467452, at *4.  Lam petitioned for review in the California Supreme

Court, which was summarily denied on December 11, 2013.

While his petition for review was pending, Lam filed in the California Superior Court a

*pro se* petition for a writ of habeas corpus, alleging that the revocation of his parole was based

on fabricated testimony and that his trial counsel rendered ineffective assistance by failing to

make him aware of the waiver process that would have allowed him to delay his parole

proceedings until his criminal case was completed.  On June 22, 2012, the superior court denied

the petition with citations to *People v. Duvall*, 886 P.2d 1252 (Cal. 1995) and *In re Clark*, 855

P.2d 729 (Cal. 1993).[2]

---

[2]    *In re Clark* stands for the proposition that "factual allegations should . . . be
supported by '[reasonably available] documentary evidence and/or affidavits.'"  855 P.2d at 749
n.16.  *Duvall* re-asserts the requirement that documentary evidence must be provided and stands
for the additional proposition that facts be stated fully and with particularity.  886 P.2d at 1258
(stating that habeas petitions "should both (i) state fully and with particularity the facts on which

Again proceeding *pro se*, Lam filed a petition for a writ of habeas corpus in the Court of Appeal, alleging that his appellate counsel was ineffective for submitting a *Wende* brief. The petition was denied without comment on May 9, 2013. Lam then filed an additional *pro se* petition for a writ of habeas corpus in the Court of Appeal. In that petition, he alleged that trial counsel was ineffective for failing to investigate potential third-party culpability and that the prosecutor committed a *Brady*[3] violation by failing to disclose evidence of that third-party culpability. The Court of Appeal summarily denied the petition on August 1, 2013.

Lam then filed another *pro se* petition for a writ of habeas corpus in the California Superior Court. In that petition, he re-asserted his claims that trial counsel was ineffective for failing to investigate potential third-party culpability and advising him to reject plea offers and the prosecutor committed a *Brady* violation by failing to disclose evidence of third-party culpability. The Superior Court denied the petition in a reasoned, unpublished decision issued on February 10, 2014. Lam then raised those claims in a *pro se* petition for a writ of habeas corpus in the California Supreme Court, which was denied without comment on March 19, 2014.

Lam additionally filed a third *pro se* petition for a writ of habeas corpus in the California Court of Appeal, which alleged that he was convicted by evidence illegally obtained without a valid search warrant. This petition was likewise summarily denied on July 17, 2014. He then

---

relief is sought as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations" (citations omitted)).

[3]        *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law. *Brady* and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

raised his illegal search and seizure claim to the Superior Court, which rejected it in a reasoned, unpublished opinion issued on September 5, 2014.

Lam timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on June 19, 2014.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Lam raises five grounds for relief.  He first argues that trial counsel was ineffective for failing to investigate evidence of third-party culpability. Lam additionally contends that trial counsel was ineffective during plea negotiations.  Third, Lam avers that he was convicted based on false evidence.  Lam next argues that the prosecutor committed misconduct by vouching for a witness who the prosecutor knew had perjured himself. Finally, Lam claims that the prosecutor also committed misconduct by failing to disclose evidence favorable to the defense.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Here, the only decision on Simmons' collateral review claims was a summary denial by the California Supreme Court on habeas review, which is an adjudication on the merits and entitled to deference. *Harrington v.*

*Richter*, 562 U.S. 86, 99 (2011).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.      <u>*Ineffective Assistance of Trial Counsel*</u> (Grounds One and Two)

Lam first argues that habeas relief is warranted due to the failings of his trial counsel.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the

*Strickland* standard is a general standard, a state court has even more latitude to
reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Lam must show that defense counsel's representation was not within the range of

competence demanded of attorneys in criminal cases, and there is a reasonable probability that,

but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474

U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner

fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466

U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if

the defendant fails on one).

1.      Failure to investigate

Lam first faults counsel for failing "to discover that Malia Tiapula was arrested, charged,

and sentenced prior to petitioner's trial."  Tiapula is the woman who accompanied him to

Buckley's apartment and is identified in the Court of Appeal's decision as "a woman named

Melia;" Lam avers that Tiapula was the real perpetrator.  According to Lam, "[i]t is reasonably

probable that a result more favorable to [him] would have occurred if trial counsel performed a

reasonable pretrial investigation."

The California Superior Court denied this claim on habeas review as follows:

Petitioner claims that his counsel was ineffective for failing to investigate the case
against Malia Tiapula and that the prosecution should have provided information about
Tiapula's case.  Petitioner does not explain why facts regarding Tiapula's case would
have affected his.  If he thinks that Tiapula's conviction means that he could not have
been convicted, that is not true.  Instead, it appears from the facts cited by the appellate
court that petitioner and Tiapula each had a role in taking the vehicle.

Lam fares no better on federal habeas review.  An independent review of the record confirms the superior court's conclusion that Tiapula's involvement and criminal liability did not exempt Lam from conviction.  Rather, the facts trial showed that both Lam and Tiapula played a role in stealing Wheeler's truck.  Consequently, even if trial counsel was deficient in investigating Tiapula's role in the crime, Lam cannot show that he was prejudiced by the allegedly-inadequate investigation, and he is not entitled to relief on this claim.

2.      Plea negotiations

Lam additionally contends that his trial counsel rendered ineffective assistance during plea negotiations.  According to Lam, counsel failed to advise him of the low probability of success at trial.  Importantly, however, he does not allege that counsel failed to disclose the plea offers to him; rather, the record shows that he was fully aware that the plea offers had been made. The Court of Appeal laid out the following facts underlying this claim:

> The minutes for March 29, 2012, reflect a plea offer of 32 months, consisting of twice the low term of 16 months.  There is no oral record of this offer.
> On June 14, 2012, the prosecutor placed a second plea offer on the record as follows: "I would obviously entertain any counteroffers from [defendant], but we've sort of been through this already.  It would be two years on the [Vehicle Code section] 10851, doubled to four by virtue of the strike prior.  I'd dump all of his one-year priors."
> The trial court responded: "All right.  The little I know about the case, that sounds like a fair offer.  But then, again, I don't know all the facts.  So it's hard for me to make a final judgment on that.  [¶]  Based upon what I know and what I've heard happened, some other things related to [Lam], sounds like a fair offer to me, but obviously [Lam] knows he has a right to a trial, jury trial."
> [Lam] did not accept either plea offer and proceeded to jury trial.

*Lam*, 2013 WL 5467452, at *2.

Lam raised on state habeas review his claim that counsel was ineffective with respect to those offers, and the superior court described the following additional facts relating to the claim:

Petitioner states that he was offered plea agreements of 32 months and 48 months. He says that his attorney did not tell him that the victim would testify that he saw petitioner driving away in the stolen vehicle. He says that he had taken plea agreements in the past and would have taken either of these agreements if his counsel had told him that he was extremely unlikely to win at trial. Petitioner also said he thought that testimony by Amanda Gibbons[4] would be persuasive.

The *Strickland* standard also applies to claims of ineffective assistance during the plea bargain process. *See Lafler*, 132 S. Ct. at 1384 ("During plea negotiations, defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Specifically, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *See Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (citation omitted). To show prejudice from ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a petitioner] must demonstrate a reasonable probability" (1) he "would have accepted the earlier plea offer"; and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 132 S. Ct. at 1409.

---

4        Gibbons was subpoenaed by defense counsel but failed to show up at trial. According to Lam, "Malia Tiapula used Amanda Gibbon's phone to claim that petitioner possessed the stolen truck while Malia Tiapula was *actually in* the stolen Ford Ranger. She also stated [to a defense investigator] that she saw Malia Tiapula wiping down the interior possibly to remove her fingerprints." Petition (Docket No. 1) at 27 (emphasis in original). As the superior court concluded on habeas review, however, Lam:

does not show that testimony by Gibbons would have been in his favor. An investigator's report in the court file shows that Gibbons told the investigator that she had not seen petitioner in the truck. She had, however, relayed phone messages between Tiapula and petitioner that involved the truck. Furthermore, she could not pinpoint when, exactly, she had seen Tiapula with the truck. Her testimony would not have excluded petitioner as the person who took the vehicle and, in fact, may have encouraged the belief that petitioner was involved.

In the last reasoned decision addressing this claim, the California Superior Court rejected it because Lam offered nothing but his own statement that he would have accepted the offer and failed to demonstrate that the trial court would have accepted it.  Noting that, when Lam tried to raise this claim on direct appeal, the Court of Appeal "stated that the record did not disclose why counsel acted or failed to act," the Superior Court concluded, "That remains the case."  Indeed, that conclusion is unchanged on federal habeas review.  Just as on state habeas review, "Petitioner still has not explained what advice counsel gave or what factors might have affected that advice."

While Lam argued that he was unaware that the victim would identify him, the record shows otherwise.  Testimony at a pretrial hearing and at Lam's parole revocation hearing made clear that Lam was aware that the victim had identified him.  Likewise, as previously discussed, it is doubtful that Gibbons' testimony would have been helpful to Lam's case.  He fails to provide evidence that counsel errantly advised him otherwise.  *See, e.g.*, *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting *Strickland* claim where petitioner presented no evidence of deficient performance "other than [the petitioner's] own self-serving statement"); *see also Gentry v. Sinclair*, 705 F.3d 884, 900 (9th Cir. 2013) ("Because 'counsel is strongly presumed to have rendered adequate assistance,'" it was not unreasonable for state court to reject petitioner's ineffective assistance of counsel claim when petitioner provided no evidence to support the claim (quoting *Strickland*, 466 U.S. at 690)); *Sandgathe v. Maass*, 314 F.3d 371, 379 (9th Cir. 2002) (affirming denial of ineffective assistance of counsel claim where petitioner presented no evidence in support of claim).  Unsupported, self-serving statements such as those offered here by Lam are insufficient to establish ineffective assistance in connection with a plea

-11-

offer; "[i]f the rule were otherwise, every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002).  Accordingly, Lam is not entitled to relief on this claim.

B.    *Prosecutorial Misconduct* (Grounds Three, Four, and Five)

Lam additionally avers that the prosecutor's various forms of misconduct warrants reversal of his conviction.  A habeas petition alleging prosecutorial misconduct will be granted only when the misconduct did "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

1.    Use of false evidence

Lam first alleges that the prosecutor elicited and knowingly presented false testimony from the victim.  "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted).  The essential elements of such successful claim are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material.  *Hayes v. Brown*,

399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959);

*Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).  Thus, if Lam successfully shows

that the prosecutor knowingly elicited perjured testimony material to his case, habeas relief may

be warranted.

     Although the prosecutor has a duty to refrain from knowingly presenting perjured

testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not

support Lam's unsupported contention that the prosecution knowingly introduced the perjured

testimony of Wheeler.  Indeed, Lam has failed to show that Wheeler perjured himself at trial.  As

the Court of Appeal concluded on direct appeal:

> The premise of [Lam's] argument is that "Ninety-one minutes elapsed between when [the victim]'s truck is stolen and [when] he calls 9–1–1."  From that premise, [Lam]  argues Wheeler was not telling the truth "on the phone during the 9–1–1 call which occurred at 7:01 a.m.," when Wheeler claimed the truck had been stolen just five minutes earlier.  [Lam] claims the prosecutor knew, contrary to his motion in limine, the 911 call was not a spontaneous utterance for purposes of the hearsay rule (Evid. Code, § 1240) and was "in fact false evidence."  [Lam] further claims the trial court abused its discretion when it allowed the 911 call to be admitted into evidence "without any explanation for the 91–minute gap between the theft and the phone call."
>
> [Lam's] arguments fail because his sole citation to the record (in his statement of facts) does not establish the existence of a 91–minute gap.  The cited material indicates Wheeler was uncertain of the time [Lam] and Melia arrived at Buckley's residence (sometime between 5:00 a.m. and 5:45 a.m.).  Wheeler explained that, at that time, "it was dark out [and] the sun had not come out yet."  But the record does not establish how much time elapsed between the 5:00 a.m. to 5:45 a.m. arrival of [Lam] and Melia and the theft of Wheeler's truck.  Thus, the record does not suggest Wheeler was lying when he testified that, at 7:01 a.m., the sun "wasn't out yet" but "was coming up."  Nor does the record suggest Wheeler was lying when he told the 911 operator his truck had been stolen five minutes earlier.

*Lam*, 2013 WL 5467452, at *3 (citation omitted).

     Because Lam cannot show that Wheeler's testimony was false, he cannot show that the

prosecutor committed misconduct with regard to that testimony.  For the same reason, Lam

cannot prevail on his related claim that the trial court abused its discretion in admitting

Wheeler's testimony.

2.      Vouching for witness

Lam similarly argues that the prosecutor committed misconduct by vouching for the false

testimony of Wheeler.  The Court of Appeal considered and rejected this claim as follows:

> [Lam] contends the prosecutor vouched for the credibility of Wheeler, a witness
> he knew was untruthful.  [Lam] further contends the prosecutor failed to correct
> Wheeler's false statements about the sun coming up and about [Lam] and Melia arriving
> at 5:00 a.m.
> In part III, ante, we rejected [Lam's] claims that Wheeler's statements were false.
> This leaves the issue of whether the prosecutor vouched for Wheeler.  We conclude he
> did not.
> In his closing summation, the prosecutor discussed Wheeler as follows:
> "That guy is not coming in here and making up lies.  What reason would he have
> to do that?  Ask yourself that.  Maybe the guy isn't the perfect witness.  He certainly isn't
> the perfect human being, certainly has his own way of dealing with things that probably
> you wouldn't want to employ yourself in a similar situation.  Blame him for that.  Go
> ahead.  But don't fall for these particular tricks that are being employed right now saying
> he's a liar about it.
> "It's obvious that he had his truck stolen.  He called and reported it stolen.  And
> he gave great details about how it was stolen by this guy right here.
> "[Defense counsel] also talked about how Detective Reese was unwilling to talk
> to [the victim] about the inconsistencies.  I do remember [defense counsel] asking
> [Detective] Reese: Did you confront [the victim] about these inconsistencies?
> "Well, the one thing [defense counsel] didn't tell you was what the detective's
> response was.  'I didn't see any.'  That was his testimony.  'I didn't see any
> inconsistencies with what he was telling me from day one to day two.'
> [Lam's] claim of vouching was forfeited by his failure to object.  In any event, the
> vouching claim fails on the merits.
> The prosecutor did not place the prestige of the government behind Wheeler
> through personal assurances of veracity, or suggest that information not presented to the
> jury supported his testimony.  Rather, the prosecutor's assurances were "'based on the
> "facts of [the] record and the inferences reasonably drawn therefrom, rather than any
> purported personal knowledge or belief."'"  Thus, the prosecutor's "'comments cannot be
> characterized as improper vouching.'"
> Having undertaken an examination of the entire record, we find no arguable error
> that would result in a disposition more favorable to [Lam].

*Lam*, 2013 WL 5467452, at *4 (citations omitted).

A prosecutor may not vouch for the credibility of a witness.  "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony."  *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993); *see also Lawn v. United States*, 355 U.S. 339, 359 n.15 (1958); *Berger v. United States*, 295 U.S. 78, 86-88 (1935).  Such misconduct poses two dangers: it may lead the jury to convict on the basis of evidence not presented, and it carries with it the imprimatur of the government.  *United States v. Young*, 470 U.S. 1, 18-19 (1985).  Again, however, to warrant habeas relief, prosecutorial vouching must so infect the trial with unfairness as to make the resulting conviction a denial of due process.  *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004).

As an initial matter, the Court of Appeal rejected Lam's improper vouching argument due to a failure to object at trial.  Consequently, because the state appellate court found this claim forfeited under California's contemporaneous objection rule, it is procedurally defaulted from federal habeas review.  *Coleman*, 501 U.S. at 729-30 (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment).  The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

And even if the claim were not procedurally barred from review here, Lam would not be entitled to relief on it.  An independent review of the record reveals that the prosecutor did not

use the prestige of the government, or suggest he was privy to information withheld from the jury that supported or discredited Wheeler's testimony.  Rather, the prosecutor attempted to persuade the jury that Wheeler was telling the truth.  Ultimately, the prosecutor's arguments were permissible comments based on the state of the evidence presented at trial.  *See Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995) (permissible for prosecutor to argue credibility of witness based on the evidence presented at trial).  Accordingly, the Court of Appeal's rejection of this claim did not contravene or unreasonably apply federal law.

3.      *Brady* violation

Finally, Lam argues that the prosecution violated its discovery obligations by failing to disclose evidence of third-party culpability, namely, the subsequent arrest and conviction of Tiapula.  "[T]he Constitution does not require the prosecutor to share all useful information with the defendant."  *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (citing *Weatherford v. Bursey*, 429 U.S. 545, 549 (1977) ("There is no general constitutional right to discovery in a criminal case.").  *Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching," *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed.  *Strickler*, 527 U.S. at 281.  That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."  *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Lam cannot show a *Brady* violation here.  As previously discussed, contrary to Lam's contention, Tiapula's culpability does not exonerate Lam because there was evidence in the record that both Lam and Tiapula were involved in the theft.  Lam thus cannot show that the allegedly-withheld information was favorable to him, and his *Brady* claim must fail.

## V. CONCLUSION AND ORDER

Lam is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 20, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge